IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TERA KNOLL, | : | CIVIL ACTION |
| Plaintiff | : | |
| | : | |
| v. | : | NO. 08-4692 |
| | : | |
| CITY OF ALLENTOWN, | : | |
| Defendant | : | |

**M E M O R A N D U M**

**STENGEL, J.**                                                                                     December 4, 2008

Tera Knoll complains that her civil rights were violated when she was harassed during her employment with the city of Allentown because she is a woman. She also alleges that after she asserted her rights, Allentown retaliated by demoting her, paying her less, harassing, and eventually discharging her. After she filed this lawsuit, Allentown moved to dismiss her complaint (Document #2). For the reasons that follow, I will deny Allentown's motion.

**I. BACKGROUND**[1]

Allentown hired Knoll in 1996. Knoll worked for Allentown for almost ten years (the last 4 years in the parks department) until she was fired on April 5, 2006 for tape-recording a conversation with her supervisors about her harassment.

---

[1] I have viewed the facts in the light most favorable to the plaintiff, as the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

### A. Workplace Harassment

#### 1. Harassment by male coworkers

Just over a year before she was fired, Knoll began to be harassed by her male coworkers because she is a woman.  During that year, a male coworker, Mike Lutte, told Knoll that "her voice was disgusting and she was no longer allowed to laugh."  Compl. ¶ 8.  A week later, Lutte (who had a "habit of driving dangerously close" to Knoll in the parking lot) "came so close [to her] that the side view mirror of his vehicle brushed against [her] coat and she was spun around by the force."  Compl. ¶ 9.  Lutte also called Knoll a bitch "on many dates" including on six specified dates in the spring of 2005.  Compl. ¶ 11.  On June 29, 2005, Lutte "jabbed [Knoll] twice in the knees with a tool" because (she believes) he "was trying to trip her."  Compl. ¶ 14.  When Knoll complained about this incident to her supervisor, a man named Bruce Solt, he told her "there was nothing that could be done."  Id.  Lutte's actions, however, were so threatening to Knoll that she sometimes hid in the carpenter's shop to wait for him to leave. On June 29, 2005 (the same day on which she complained to the supervisor about Lutte jabbing her with a tool), Lutte and another coworker locked Knoll in the carpenter shop and "dragged a sofa in front of the door" so she could not leave that room.  Compl. ¶ 15.  On October 4, 2005, Lutte told Knoll, "You'd better hurry to your car before you get run over." Compl. ¶ 16.

Another male coworker, Christian Blanco, "made degrading comments about women" in Knoll's presence, "played violent music in his vehicle about killing and raping

women" and made Knoll "very uncomfortable."  Compl. ¶ 10.

One day, when an orange traffic cone became stuck under her car, Knoll tossed it aside but the cone accidentally struck a vehicle that belonged to another male coworker, Phil Janenko.  Janenko then followed Knoll "into the locker area, and threatened physical violence against [her] for touching his car."  Compl. ¶ 12.

**2. Discrimination in her job**

In February or March 2005, Knoll was promoted from a Maintenance Worker I position to a Maintenance Worker II position. Seven or eight months later (on October 10, 2005), Knoll was demoted back to Maintenance Worker I.  Solt told Knoll that she was demoted "because the males did not want to work with her and she was constantly arguing with other employees."  Compl. ¶ 35.

During her months as a Maintenance Worker II, Knoll was informed (around April 2005) that she "would have to pay for going to tree climbing school on her own."  Compl. ¶ 28.  This was a surprise to Knoll for several reasons.  First, tree climbing is an essential job function for the Maintenance Worker II position, according to Allentown's job description.  Second, Allentown's contract with the union states that Allentown "will reimburse an employee for job-related education."  Compl. ¶ 6. Finally, Allentown had paid for tree climbing school for *men* who were Maintenance Worker IIs.

On April 5, 2006, Knoll was fired.  Sonya Stevens, Allentown's director of human

resources, informed her that the reason for the firing was that Knoll had recorded her conversation about her harassment with superintendent John Fasolka and Solt.

### B. Non-Workplace Harassment

#### 1. Pre-Termination

In December 2005, Knoll's car began to rattle. Compl. ¶ 18. The rattling got worse until July 25, 2006 when the right rear brake fell off. Compl. ¶¶ 18, 19. Knoll's mechanic stated that there could be only two possible causes: (1) undercarriage damage or (2) someone loosening the bolts. The mechanic said there was no undercarriage damage to Knoll's car. Comp. ¶ 20.

On August 8, 2005, the springs on Knoll's trailer were disconnected. Knoll alleges that she was injured by this vandalism and unable to work for eight weeks. Compl. ¶ 23.

#### 2. Post-Termination

Several incidents of harassment happened outside of the parks department in the days and months following Knoll's termination. The first occurred on May 29, 2006 when Knoll returned from a Memorial Day picnic to find "garbage strewn all over her yard." Compl. ¶ 24.

On October 7, 2006, Knoll found a "sports drink bottle filled with chewing tobacco spit" on her front porch. Lutte chews tobacco and drinks the same brand of

sports drink, therefore Knoll believes he was the one who threw the bottle on her porch. Compl. ¶ 17.

On June 14, 2006, a tire was slashed on Knoll's car while it was parked in her driveway. Compl. ¶ 25. One year later (again while it was parked in her driveway) during the early morning hours of June 14, 2007, Knoll's right front tire was slashed. Compl. ¶ 21.

On June 24, 2006, Knoll found a cigarette butt beneath her bedroom window. Compl. ¶ 26.

**C. Knoll's Termination**

On April 5, 2006, Knoll was terminated by defendant because she made an audio recording of her supervisors' conversation with her about the harassment she had been experiencing without first obtaining their permission. Defendant alleges that making such a recording is a crime in Pennsylvania and that it was therefore justified in terminating her.[2]

---

[2] Defendant may be referencing 18 Pa.C.S. § 5703 which provides that "a person is guilty of a felony of the third degree if he: (1) intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept any wire, electronic or oral communication; (2) intentionally discloses or endeavors to disclose to any other person the contents of any wire, electronic or oral communication, or evidence derived therefrom, knowing or having reason to know that the information was obtained through the interception of a wire, electronic or oral communication; or (3) intentionally uses or endeavors to use the contents of any wire, electronic or oral communication, or evidence derived therefrom, knowing or having reason to know, that the information was obtained through the interception of a wire, electronic or oral communication." An "oral communication" as defined by that statute and interpreted by

**II. STANDARD FOR A MOTION TO DISMISS**

The purpose of a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure is to test the legal sufficiency of a complaint. Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993). When considering a motion to dismiss, courts must construe the complaint liberally, accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008); Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996). Courts look only to the facts alleged in the complaint and not to matters extraneous to the pleadings in deciding a motion to dismiss. Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994); In re Burlington Coat Factory Sec. Litig.,

---

Pennsylvania courts appears to preclude defendant's reading, however. See 18 Pa.C.S. § 5702 (stating "Oral communication: Any oral communication uttered by a person possessing an expectation that such communication is not subject to interception under circumstances justifying such expectation. The term does not include any electronic communication"); see also Agnew v. Dupler, 717 A.2d 519 (1998) (finding that police officer's conversations with two other officers in squadroom were not "oral communications" because officer did not possess reasonable expectation of privacy in conversation because squadroom door was open, conversations could be heard without amplification in police chief's office, the chief had a light on in his office, and intercom lines on squadroom telephones could have been open at any time); Barr v. Arco Chemical Corp., 529 F.Supp. 1277 (S.D. Tex. 1982) (interpreting Pennsylvania law to hold that former employer could not recover for invasion of privacy arising out of former employee's tape recording of conversation which ensued when his employment was terminated because it was inconceivable that employer could prove any facts relating to circumstances of communication to justify an expectation of privacy on its part and no employer could reasonably have expected that employee would not report communication).

114 F.3d 1410, 1426 (3d Cir. 1997). Under Fed. R. Civ. P. 8(a)(2), the complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  The statement must provide to defendant "fair notice of what the . . .claim is and the grounds upon which it rests." Bell Atlantic Corp. v. Twombly, --- U.S. ---, 127 S.Ct. 1955, 1964 (2007); see also D.P. Enters. v. Bucks County Cmty. Coll., 725 F.2d 943, 944 (3d Cir. 1984).

Establishing that no possible claim has been presented is the defendants' burden at this stage.  Ransom v. Marrazzo, 848 F.2d 398, 401 (3d Cir. 1988). Courts, however, will not accept as true "bald assertions" or "vague and conclusory allegations." See Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997); Sterling v. Southeastern Pa. Transp. Auth., 897 F. Supp. 893 (E.D. Pa. 1995).

III. DISCUSSION

**A. Knoll Stated a Harassment Claim**

Knoll has alleged facts that state a claim under Title VII and the PHRA because she has included all the factors of the relevant five-part test in her allegations.  Kent v. Henderson, 77 F. Supp. 2d 628, 631 (E.D. Pa. 1999) (citing Kunin v. Sears Roebuck & Co., 175 F.3d 289, 293 (3d Cir. 1999)).[3]

---

[3] I have analyzed her claim by looking to the surrounding circumstances to determine her case's merit, including the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Id. (citing Harris v. Forklift Systems, 510 U.S.


First, Knoll has alleged that she suffered intentional discrimination because she is a woman. Among other things, her coworkers made degrading comments about women, called her a "bitch" and played violent music about killing and raping women. Second, she has shown that the discrimination was pervasive and regular. Knoll alleges more than a dozen incidents of workplace harassment and many out-of-workplace incidents of harassment. Third, she has shown that the discrimination detrimentally affected her. As a result of some of her coworkers' alleged actions, Knoll suffered economic injuries resulting from her demotion, firing, and damage to her personal property (including her car and trailer). She also suffered physical injuries as a result of being struck by a coworker's vehicle's side mirror and as a result of the vandalism to her trailer springs. She alleges suffered psychological harm as a result of her treatment which not only included being called a "bitch" and threatened, but being shut into a carpenter shop at work. Fourth, she has alleged facts which show that the discrimination would detrimentally affect a reasonable woman in her position. Fifth and finally, Knoll has shown the existence of *respondeat superior* liability. She alleges that she brought her coworkers' actions to her supervisors' attention and that she was fired for complaining about their mistreatment.

Knoll has alleged that the discrimination is more than "simple teasing" or "off-hand comments" or "isolated incidents." See Faragher v. City of Boca Raton, 524 U.S.

---

17, 21 (1993)).

775, 788 (1998). She has alleged facts, which, if true demonstrate that Allentown's parks department is "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the condition of [Knoll's] employment and create an abusive working environment." Harris, 510 U.S. at 21. The incidents she alleges occurred both in concert and with regularity. Andrews v. City of Philadelphia, 895 F.2d 1469, 1484 (3d Cir. 1990).

### B. Knoll May Proceed to Discovery to Establish That She Timely Filed with the PHRC.

Knoll's termination occurred on April 5, 2006 which was less than 180 days before her complaint was filed with the PHRC on April 17, 2006. The facts alleged in her complaint allege a claim under the continuing violation theory because the complaint sets forth a continuing pattern of discrimination. See West v. Philadelphia Electric Co., 45 F.3d 744, 754-55 (3d Cir. 1995). Therefore, her claims under the PHRA will not (at this time) be limited to those arising out of her termination.

### C. No Part of the Complaint Will Be Stricken

As the complaint contains no "allegations that are so unrelated to plaintiff's claims as to be unworthy of any consideration," nothing in the complaint shall be stricken. Diepietro v. Jefferson Bank, 1993 WL 101356, 1 (E.D. Pa. 1993). The fact that Knoll may have been harassed by her coworkers outside of the workplace is relevant. Knoll has

presented circumstantial evidence that at least some of the incidents of harassment outside of the workplace were - more likely than not - perpetrated by defendant. It is simply incorrect to say that her allegations "have no possible relationship to Plaintiff's claims." Mot. to Dismiss, page 13.

While it is true that "these allegations. . . reflect cruelly upon the moral character of Allentown employees," if the allegations are accurate, they are pertinent and material and represent compensable injuries. Id. at 14.

**IV. CONCLUSION**

For the foregoing reasons, defendant's motion to dismiss is denied. This case shall proceed to discovery on the schedule set forth in my previous order of November 25, 2008 (Document #9).

An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TERA KNOLL, | : | CIVIL ACTION |
|     Plaintiff | : | |
| | : | |
| v. | : | NO. 08-4692 |
| | : | |
| CITY OF ALLENTOWN, | : | |
|     Defendant | : | |

**O R D E R**

**STENGEL, J.**

**AND NOW**, this 4th day of December, 2008, upon consideration of defendant's motion to dismiss (Document #2) and plaintiff's response thereto (Document #7), it is hereby **ORDERED** that the motion is **DENIED**.

BY THE COURT:

/s/ Lawrence F. Stengel
LAWRENCE F. STENGEL, J.