IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TERA KNOLL, | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| CITY OF ALLENTOWN, | : | |
| Defendant. | : | NO.  08-04692 |

**STENGEL, J.**                                            **September 30, 2011**

### <u>MEMORANDUM</u>

This dubious employment discrimination claim resulted, to the surprise of no one who understood the case, in a jury verdict for the defendant.  The ill-conceived and poorly presented gender discrimination claim was put to rest at trial when I granted the City of Allentown's Motion for Judgment as a Matter of Law.  The retaliation and harassment claims presented, to be generous, questions of fact to be resolved by the eight citizens empaneled to decide the case.  After a verdict that was well-supported by the facts and law, which was promptly delivered and, above all, just, the plaintiff filed a Motion for a New Trial.  This hollow motion was dismissed for lack of prosecution fifty-one days after it was filed.  Presently, the City of Allentown is seeking an order of sanctions against the plaintiff, Tara Knoll, and her attorney, Donald P. Russo, Esquire.

To its credit, the City of Allentown is not seeking sanctions for having to defend this silly case.  The story presented by the plaintiff at trial was riddled with credibility shortcomings sufficient to raise a question of fact requiring me to send the case to the

jury.  The fact that ultimately no one except the plaintiff, and I presume her attorney, believed her story, does not render her case sufficiently frivolous to merit Rule 11 sanctions.  The City understands this and has not moved for sanctions based upon the case itself.  The basis for the Rule 11 request for sanctions is the plaintiff's Motion for a New Trial, which raised no legitimate error of law, which pointed to no question about the factual support for the verdict, and which would never have entitled the plaintiff to post-trial relief under any massaging or stretching of the law or the facts.

The facts of this case are simple.  Tara Knoll worked for the Parks Department in the City of Allentown.  She claims that two men in the department harassed her and said unpleasant things to her.  She claims to have suffered severe psychological and emotional injuries as a result of sexual harassment and retaliation.  The testimony at trial was a sordid story of who called whom a name, who bumped into whom, and what job conditions, according to the plaintiff, created an atmosphere of sexual harassment.  Mr. Steckle and Mr. Lutte, the alleged harassers, were fellow employees of the plaintiff.  Each testified, credibly in the view of the jury, that there was no sexual harassment or any gender-based negative treatment or harassment of Ms. Knoll.

Ms. Knoll admitted on the witness stand that she was untruthful during her testimony, and that her dismissal by the City of Allentown was not based on her gender.  At some point during her unpleasant relationship with her fellow workers, she chose to secretly tape record a conversation with her superiors without their knowledge.  When she was terminated, her superiors informed her that she violated the Pennsylvania Wiretap Law when she used an audio recorder to record conversations with others

2

without their knowledge.[1]  Whether or not the City of Allentown applied the Wiretap

Law properly is not really the question.  In its view, she violated the law and that was

reason enough for her termination.  The jury was given the opportunity to determine

whether this reason was a pretext.[2]  At trial, the plaintiff testified as to emotional and

psychological injuries as a result of the discrimination and retaliation.  The City presented

the testimony of Frank Dattilio, Ph.D., a psychologist who reviewed the records of Ms.

Knoll's treatment and offered opinions whether she suffered any harm, and whether her

well-documented mental health pathologies contributed to the sad events marking her

time of employment with the City of Allentown.

      The Motion for a New Trial questioned the factual basis for the verdict and noted

several errors of law.  Because the plaintiff never really pursued the motion for post-trial

relief, there is no need for an in depth discussion of the issues she raised.  Yet, Allentown

was put in a position to evaluate the motion and to move for its dismissal.

      A few examples from the motion should illustrate its patently frivolous nature.

Citing a novel and misguided application of <u>Burlington Industries, Inc. v. Ellerth</u>, 524

U.S. 742 (1998) and <u>Faragher v. City of Boca Raton</u>, 524 U.S. 775 (1998), Ms. Knoll

contends the City had an affirmative duty to show that they did not harass her, and that

they did not establish or tolerate a hostile work environment.  <u>Ellerth</u> and <u>Faragher</u>

address the responsibility of an employer where a supervisor creates a hostile work

environment.  In this case, the jury found that there was no sexually harassing conduct,

---

1 The statute is known as the Wiretapping and Electronic Surveillance Control Act, 18 Pa CSA §5701.
2 The Jury, in fact, never reached this issue because they found there was no sexual harassment or gender
discrimination in the first instance.

there was no causal connection between Ms. Knoll's complaints of harassment and the

City's decision to terminate her, and there was no retaliation involved in the City's

decision not to promote her.  Without that basis, there is no obligation under <u>Ellerth</u> and

<u>Faragher</u> for the City to come forward to show a lack of a hostile work environment.

Second, Ms. Knoll refers to an "assault" on her character, the likes of which, in the words

of her attorney, have not been seen since the "Clarence Thomas – Anita Hill hearings."

This hyperbole, it appears, refers to the well-documented, carefully reasoned and well-

presented testimony of Dr. Dattilio.  This was far from character assassination.  It was, in

fact, a response to her claim of emotional harm and relevant evidence on the issue of

causation.

Perhaps the most fascinating "error" referred to in the Motion for a New Trial

concerns the plaintiff's personnel file, identified at trial as "exhibit 13."  Defense counsel

used the personnel file in questioning at least one witness.  Neither plaintiff's counsel,

nor defense counsel moved the admission of exhibit 13.  At the end of the case, after the

jury had been instructed and sent to the jury room to begin deliberations, Mr. Russo

moved to have exhibit 13 sent out to the jury.  He insisted on exhibit 13 going out to the

jury ostensibly because it contained the only information in the case about the plaintiff's

compensation.  Never mind that the plaintiff asserted no claim for economic harm.

Notwithstanding the possibility that the issue of back pay was for the court, not the jury,

(an issue never addressed by plaintiff's counsel because he had no evidence of back pay

or front pay in the record at any time), it was simply not error for the court to refuse to

send an exhibit to the jury which had never been moved into evidence.  A more detailed

analysis of the claims raised in the post-verdict motion would show that there was, in fact, no merit to any of the points raised by the plaintiff.

The court is mindful of the expense incurred by the City of Allentown in responding to the frivolous Motion for a New Trial.  The court is further aware of the numerous cases in which Mr. Russo's conduct has been questioned or criticized by other judges on this court and in the Middle District.  This information would be relevant to the amount of Rule 11 sanctions should they be awarded.  Sanctions are to be applied only in the exceptional circumstance where a claim or motion is patently unmeritorious or frivolous.  Ario v. Underwriting Members Syndicate 53 at Lloyds for 1998 Year of Account, 618 F.3d 277, 297 (3d Cir. 2010) (quoting  Doering v. Union Cnty. Bd. of Chosen Freeholders, 857 F.2d 191, 194 (3d Cir. 1988)).  Courts "must avoid drawing on the wisdom of hindsight and should test the signer's conduct by determining what was reasonable when the document was submitted."  Garr v. U.S. Healthcare, Inc., 22 F.3d 1274, 1279 (3d Cir. 1994).  The City of Allentown raises valid concerns regarding the conduct of the plaintiff and her attorney in pursuing the Motion for a New Trial.

I have two concerns about imposing Rule 11 sanctions in this case.  The first involves a procedural issue, which I believe is dispositive.  Rule 11 contains a "safe harbor provision" which requires a party seeking sanctions to serve the motion on the other party before filing a motion with the court.  Rule 11(c)(2) provides:

> A motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b).  The motion must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention or denial is withdrawn or appropriately corrected within twenty-one days after service,

5

or within another time the court sets.  If warranted, the court may award to the prevailing party the reasonable expenses, including attorneys' fees incurred for the motion.

In this case, the City of Allentown's Motion for Sanctions was not served on the plaintiff, or her attorney.  Rather, counsel for the defendant sent a letter dated August 3, 2010 informing Mr. Russo that the City of Allentown would seek sanctions under Rule 11 if Mr. Russo did not withdraw his Motion for a New Trial within twenty-one days.  I do not believe this letter informing plaintiff's counsel that a Rule 11 Motion for Sanctions would be filed satisfies the requirement of Rule 11(c)(2).  The Rule is crystal clear that the motion "must be served under Rule 5."  While the spirit of Rule 11(c)(2) was observed by defense counsel's letter of August 3, 2010, the Rule requires more than a letter, it requires service of the motion itself.  I read this as a procedural safeguard and one which was not followed in this case.  I am aware of at least one case approving a "safe harbor letter."  See, Lai v. Wei, 207 WL 1963331 (D.N.J. filed June 29, 2007).  At least one judge in this district has found that the notice must be in the form of a motion.  See, Lasorsa v. Ameriquest Mortg. Co., 238 F.R.D. 554 (E.D. Pa. 2006) (finding the conclusion a letter began the safe harbor period was "legally incorrect given Rule 11 requires service of a motion to trigger the safe harbor period").  The purpose of the safe harbor provision is to give parties the opportunity to correct their errors.  In re Schaefer Salt Recovery, Inc., 542 F.3d 90 (3d Cir. 2008).

My second concern is whether the conduct of the plaintiff rises to the level of sanctionable conduct under the law of this circuit.  In the end, the plaintiff in this case filed a frivolous Motion for a New Trial.  The motion was not litigated.  The plaintiff failed to pursue the matter by neglecting to order a transcript and otherwise failing to prosecute the motion.  The motion was then dismissed for want of prosecution.  While this was an inconvenience to the City and caused the City to expend some additional time and resources, it seems unlikely that this would rise to the level of bad faith or sanctionable conduct for Rule 11 sanctions in this Circuit.  See e.g., Grider v. Keystone Health Plan Central, et al., 580 F.3d 119 (3d Cir. 2009).

For these reasons, the motion for sanctions under Rule 11 will be denied.  An appropriate order follows.